## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

LOYDA SANCHEZ-FIGUEROA, ET AL.,
  Plaintiffs,

     v.

BANCO POPULAR DE PUERTO RICO,          Civil No. 05-1076 (HL)
  Defendant.

## OPINION AND ORDER

Plaintiff Loyda Sanchez-Figueroa ("Sanchez"), her mother, Luisa Figueroa

Maldonado, and her sister Elizabeth Sanchez-Figueroa bring this action against Banco

Popular de Puerto Rico ("BPPR" or "the bank") pursuant to the Americans with Disabilities

Act ("ADA"), 42 U.S.C. §§ 12101-12213 alleging a failure to offer reasonable

accommodations for Sanchez's disability and pursuant to Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., alleging discrimination based on race.

Pending before the Court is Defendant's motion for summary judgment (Dkt. No. 28).

Plaintiffs filed an opposition to said motion (Dkt. No. 51) and Defendant filed a reply to said

opposition (Dkt. No. 67).  Defendant moves for summary judgment on the grounds that (1)

Plaintiffs fail to qualify as a disabled individual under the ADA, thereby failing to establish

a prima facie case of disability discrimination; (2) Plaintiff Sanchez was offered reasonable

accommodations as required by the ADA but rejected all offers; (3) BPPR had a legitimate

and nondiscriminatory reason for terminating Sanchez's employment; and (4) Plaintiffs fail

to establish a prima facie case of race discrimination under Title VII.  For the reasons set

forth below, Defendant's motion for summary judgment is hereby **granted**.

## BACKGROUND

Sanchez began working for BPPR in April 1989 as a part time employee and was eventually promoted in December 1995 to the position of Customer Service Representative. Her job responsibilities included answering telephone calls from customers, processing bank transactions, and offering the bank's products and services to clients and/or potential clients. On October 29, 2001 Sanchez was speaking to a customer on the phone and put the call on hold to obtain some information. Sanchez claims her supervisors rebuffed her requests for help. When she returned to the phone, the caller had hung up. Sanchez claims this incident was the catalyst that caused her emotional breakdown. She requested her supervisor to file a Workers Compensation Report that same day. Sanchez was eventually diagnosed with a mixed situational disorder by her treating psychiatrist, Dr. Eli Rojas. Dr. Rojas states in his medical questionnaire that the condition is not permanent. He further states in his deposition that her life activities were not substantially impaired. Dr. Rojas recommended Sanchez be transferred to a job that did not involve contact with the public. However, in his subsequent deposition he asserts that his recommendation was made to help ease Sanchez's anxiety but was not due to an inability to perform her job.

On September 24, 2006, a month before Sanchez's Workers Compensation leave was set to expire, a BPPR human resources officer contacted Sanchez regarding her return to work. Based on Dr. Rojas' recommendations, BPPR offered Sanchez three separate accomodations and/or alternative positions that did not involve substantial contact with the

2

general public.  Initially, while the bank was waiting for an appropriate position to become vacant, Sanchez agreed to resume her former job as Customer Service Representative.  She requested, and BPPR agreed, to assign her to the night shift because it had a lower call volume.  However, after being offered the position Sanchez declined the job and instead chose to remain on the day shift.  She began work again in October 2002.

On October 14, 2002 Sanchez met with a representative of the Recruitment department and was offered two new positions. One job opening was that of Office Clerk in the Trust Division and the second was Office Clerk at the Individual Lending Department.  Neither position involved contact with customers or the public.  These were the only job openings available at BPPR at that time.   Sanchez rejected both offers.  She claimed the position in the Individual Lending Department would be too stressful and complained that the position in the Trust Division involved working with dusty files. Sanchez continued working as a Customer Service Representative until March 24, 2003, when she suffered a relapse in her emotional condition.

Sanchez's contact with the Puerto Rico State Insurance Fund ("SIF") began on October 29, 2001.  She was allowed to return to work on October 7, 2002, after an absence of 343 days.  On March 24, 2003 Sanchez was again referred to the SIF due to her relapse. The SIF evaluated Sanchez's request and recommended indefinite sick leave as of March 25, 2006. On April 17, 2003 Sanchez was notified that her employment reserve had expired since more than 365 days had elapsed since her first contact with SIF on October 29, 2001. Sanchez's employment with BPPR was terminated as of April 17, 2003 due to the fact that

3

she had exhausted the SIF statutory employment reserve.

In preparation for this case Sanchez was evaluated by two additional psychiatrists. Their reports have been submitted to the Court by Plaintiffs. Dr. Jorge Suria Colon's report of September 20, 2005 states that in the psychiatrist's opinion Sanchez has no current, active mental disorder and fails to demonstrate any psychiatric impairment. He further opines, based on the results of tests performed by Dr. Rojas during the relevant period, that Sanchez had little impairment during the 2002 period as well and likely was not significantly limited in her daily functioning at that time. The November 4, 2005 report of Dr. Aida Delgado Mateo likens Sanchez's condition to a mixed bipolar disorder type I. Dr. Delgado identifies an unstable emotional condition and states that said condition has provoked a marked diminishment in Sanchez's occupational and daily life functioning that is unlikely to improve.

### STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of fact exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson*

4

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine" the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the [nonmoving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

In deciding a motion for summary judgment, the Court shall review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmovant's favor. *LeBlanc* at 841. The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has satisfied the threshold requirement, the burden shifts to the nonmoving party to present facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson* at 256. The nonmovant may not rest on mere conclusory allegations or wholesale denials. *See* Fed.R.Civ.P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir. 1995). Furthermore, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To aid the Court in the task of identifying genuine issues of material fact in the record, the District for Puerto Rico has adopted Local Rule 56 (formerly Local Rule 311.12). D.P.R. L.Civ.R 56. Local Rule 56(b) requires that a party moving for summary judgment submit in support of the motion, a separate, short, and concise statement of

5

material facts as to which the moving party contends there is no genuine issue to be tried. The moving party shall also provide the basis of such contention as to each material fact, properly supported by specific reference to the record. *Id.; see also Leary v. Dalton,* 58 F.3d 748, 751 (1st Cir. 1995). Further, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation . . ." D.P.R. L.Civ.R 56(c).

The Court will only consider the facts alleged in the parties' Local Rule 56 statements when entertaining the movant's arguments. *Rivera v. Telefonica de Puerto Rico*, 913 F. Supp. 81, 85 (D.P.R. 1995). Where the party opposing summary judgment fails to comply with the rule's requirements, the district court is permitted to treat the moving party's statement of facts as uncontested. D.P.R. L.Civ.R 56(c); *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir. 2005). "Parties ignore [such rules] at their peril." *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000).

In the instant matter Plaintiffs have filed a disorganized and convoluted statement of facts, spanning multiple documents.   The First Circuit "has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules." *Fontanez-Nunez v. Janssen Ortho LLC,* 447 F.3d 50, 55 (1st Cir. 2006) (quoting *Torres-Rosado v. Rotger-Sabat,* 335 F.3d 1,4 (1st Cir. 2003). Thus, Plaintiffs' entire statement of

facts shall not be considered by the Court as it fails to comply with the Local Rules. Local Rule 10(b) requires all documents not in the English language to be accompanied by certified English translations. D.P.R. L.Civ.R 10(b); *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 24 (1st Cir. 2006) ("In the past, we have refused to consider materials submitted to the court in any language other than English, and we continue to do so."); 48 U.S.C. § 864 (noting "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language"). Plaintiffs fail to comply with this requirement for all but three of their exhibits.  As such, the non-English exhibits will not be considered by this Court.  Consequently, much of Plaintiff's proposed statement of facts are therefore unsupported; those respective facts shall not be admitted.

Additionally, Local Rule 56 clearly states, "[a]n assertion of fact set forth in a statement of material facts shall be followed by a *citation to the specific page or paragraph of identified record material* supporting the assertion.  *The Court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.*"  D.P.R. L.Civ.R 56(e) (emphasis added).   It is insufficient to merely refer to an exhibit in general.  Rather, parties must make specific reference to pages and/or paragraphs.  Under the anti-ferret doctrine, the Court will not search through the entire record in an attempt to discern to what parties are referring in their briefs.  *See Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930-31 (1st Cir. 1983); *Dominguez v. Eli Lilly & Co.*, 958 F. Supp. 721, 727 (D.P.R. 1997) (*aff'd per curiam,* 141 F.3d 1149 (1st Cir. 1998)).   Plaintiffs disregard this principle completely. None of their

7

proposed statements of facts are cited with specificity to the record.  They do no more than identify an exhibit in general, omitting any page or line references.  As such, the Court shall not consider these statement either.

Plaintiff's non-compliance with the local rules further harms their position by resulting in a failure to properly deny or qualify Defendant's statements of uncontested fact. Plaintiff does not address Defendant's statements in a separate document as required by the Local Rules, nor do they adequately explain their denials or their qualifications. Instead Plaintiffs attempt to support their denials of Defendant's facts merely by referring the Court to their own statement of fact and exhibits.  As discussed above, Defendant's statements and exhibits (with the exception of Exhibit T, BB, and DD, which were provided in English) are not being admitted or considered by the Court.  As such, Defendant's facts have not been properly denied or qualified and the Court deems Defendant's facts uncontested.

## DISCUSSION

### I.  Disability Discrimination under the ADA

The Americans with Disabilities Act (ADA) was designed as a civil rights statute to protect the rights and prevent against discrimination of disabled persons. Title I of the ADA addresses employment rights.  Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish a claim under the ADA, a plaintiff must

show (1) that she was disabled within the meaning of the ADA, (2) that she was qualified to perform the essential functions of the job, either with or without reasonable accommodations, and (3) that her employer took adverse action against her because of the disability. *Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1166 (1st Cir. 2002).

**A.  "Disability" under the ADA**

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment". 42 U.S.C. § 12102(2).  In determining whether a disability meets the standards of the ADA, the Supreme Court has held three conditions must be met: First, the court must determine whether the physical or mental condition qualifies as an impairment; Second, the court must identify the life activity which is limited by the impairment and determine if it is a major life activity within the ADA; Third, the court must decide whether the life activity is substantially limited by the impairment.  *Bragdon v. Abbott,* 524 U.S. 624, 631 (1998).

The conflicting psychiatric reports do give rise to an issue of credibility, or a material fact to be decided by a jury.  Though the psychiatrists disagree as to whether Sanchez suffers from a mental disorder, in viewing the evidence in the light most favorable to the non-movant the Court will accept that Sanchez suffered from an impairment.  Both Dr. Rojas and Dr. Delgado diagnosed Sanchez with a mental disorder, with Dr. Rojas' assessment having been made during the time period in question.  As such, the Court shall assume the first prong of the *Bragdon* test has been met.

9

Plaintiff attempts to satisfy the second prong of *Bragdon* by arguing that an impairment to the mind automatically affects all life activities since the mind is a "pilot", directing the activities of the body and mind.   Plaintiff's understanding of the law is misguided.   The Court cannot see how this notion at all satisfies the requirement of identifying a major life activity.   Though Plaintiff lists walking, seeing, and hearing as major life activities controlled by the mind, none of these functions have been at all impaired in Sanchez's case. Plaintiff thus falls painfully short of presenting a convincing argument with regard to the major-life-activity step of the analysis.   The burden in a summary judgment motion, however, is not on the nonmovant to prove their case.   Rather, the burden falls to the moving party to establish that no material facts exist.   In keeping with this standard, and noting that the moving party does not raise this argument, the Court will defer to the assumption that one or more major life activities may be affected by Sanchez's disorder.

Finally, the Court must determine if a major life activity was *substantially* limited by the impairment.   While the ADA does not define "substantially limits", the term "substantially" suggests "considerable" or "to a large degree".   *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 196 (2002).   In determining whether an individual is substantially limited in a major life activity, the Court shall consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact resulting from the impairment. *Id.*   Sanchez's treating psychiatrist during the relevant time period, Dr. Rojas, clearly states that her condition is temporary, not permanent. He further qualifies his initial recommendation that Sanchez be accommodated at work by

10

explaining her impairment was not substantial and did not make her unable to perform her job. Rather he recommended a job change because he believed less contact with the public would ease her stress and anxiety.  Based on this evidence, the Court would be justified in holding that Sanchez's impairment did not qualify as a disability under the ADA as Sanchez's impairment was not substantially limiting.  Notwithstanding, even if the Court accepts that Sanchez was a disabled individual within the ADA, her claims still fail for the reasons explained henceforth.

**B.  Reasonable Accommodations under the ADA**

Discrimination under the ADA includes not only offensive actions against disabled persons, but also includes failing to make reasonable accommodations for an individual's disabilities.  The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does "not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A).  Assuming, without deciding, that Sanchez was a qualified individual capable of performing her job either with or without accommodations, the Court's inquiry turns to whether reasonable accommodations were in fact made by her employer.

Upon learning of Sanchez's diagnosis of mixed situational disorder and her doctor's recommendation that she be given accommodations at work, BPPR engaged in an interactive process with Plaintiff and offered three accommodations, including two new job positions

11

and an adjustment to her former position.   During the interactive process, Sanchez specifically requested to be assigned to an Office Clerk position in any area of the bank that did not involve customer contact.  BPPR consequently offered her two separate position that met this description: an Office Clerk position in the Trust Division and an Office Clerk position in the Individual Lending Division.  Neither entailed interacting with the public yet Sanchez refused both.  The bank also offered Sanchez her former job as Customer Service Representative with a change to the night shift, also per Sanchez's request.  However Sanchez ultimately refused this accommodation as well.  By offering these accommodations BPPR satisfied their obligations under the ADA, regardless of whether Sanchez chose to actually accept their offers.

## C.  Employment termination

Plaintiff also fails to satisfy the third requirement of an ADA claim, namely that she suffered averse employment action because of her disability. Sanchez claims she was fired from her job because of her mental condition.  BPPR, in response, offers a legitimate non-discriminatory reason for her termination. Sanchez was allowed a 12 month disability period under the Workers Accident Compensation Act during which her job would be preserved for her while she underwent medical treatment.  11 L.P.R.A § 5A (1935).  Her employment was terminated when this time period expired and she still did not return to work.

An employer may terminate an employee under leave by the SIF once the 12 month period elapses and the employee does not return to work.  *Torres Gonzalez v. Star Kist Caribe, Inc.*, 134 D.P.R. 1024, 1032-33 (P.R. Sup. 1994).  The periods in which the SIF

authorizes the employee to return to work while under medical treatment interrupt the running of the 12 month period. *Id.* In situations where the injured employee suffers a relapse and need additional treatment on account of the original incident, the date of the original work-related accident is used for computation purposes. *Carron Lamoutte v. Compania de Turismo del E.L.A.,* 130 D.P.R. 70, 79 (P.R. Sup. 1992). In the instant matter Plaintiff's initial leave began on October 29, 2001 and lasted until October 7, 2003, amounting to 343 days. Upon Sanchez's return to work on October 7, 2006 the time was tolled. Sanchez then suffered a relapse, still stemming from the original incident, and she resumed leave on March 25, 2003. At this time the days again began to accrue, combining with the previously accumulated 343 days. By April 17, 2003 Sanchez had accumulated an additional 23 days, thereby exhausting the allowable 365 days (12 months) of leave. When she failed to return to work at that time, her employment was terminated. As such, Defendant has adequately provided a non-discriminatory reason for terminating Sanchez's employment. It is clear she was not fired due to her disability.

## II. Race Discrimination under Title VII

Title VII of the Civil Rights Act of 1964 protects federal government employees and applicants from discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-16(a). In order to sustain a Title VII cause of action a plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). There is simply no evidence whatsoever before the Court which demonstrates that BPPR's treatment of Sanchez was at

all related to her race.  Plaintiff makes no mention of race anywhere in her summary judgment response, nor does she proffer any facts or exhibits related to race.  Accordingly, discrimination claims asserted under Title VII are hereby **dismissed** due to Plaintiff's failure to establish a prima facie claim.

## CONCLUSION

In view of the aforementioned, the Court hereby **grants** BPPR's motion for summary judgment as to the ADA and Title VII claims. Judgment dismissing this case shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 27, 2006.

S/ HECTOR M. LAFFITTE
Senior United States District Judge